In re Thomas **CUNNINGHAM**, Debtor.

Samaria K. **ROSS**, Plaintiff,

v.

Thomas **CUNNINGHAM**, Defendant.

Bankruptcy No. 83 B 4515.

Adv. No. 83 A 2100.

United States Bankruptcy Court, N.D. Illinois, E.D.

April 10, 1986.

Nicholas M. Spina, Chicago, Ill., for debtor.

Callum, Anderson & Deitsch, Wheaton, Ill., for plaintiff, Samaria K. Ross.

## MEMORANDUM OPINION AND ORDER

EDWARD B. TOLES, Bankruptcy Judge.

This cause coming on to be heard upon the Complaint to Determine Dischargeability of Debt filed by Plaintiff, SAMARIA K. ROSS, represented by CALLUM, ANDERSON & DEITSCH, and upon the response thereto filed by Debtor, THOMAS CUNNINGHAM, represented by NICHOLAS M. SPINA, and the Court, having considered the record in this case and the pleadings on file, and having afforded the parties an opportunity for hearing, and being fully advised in the premises;

The Court Finds:

1. On April 7, 1983, Debtor, THOMAS CUNNINGHAM, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. In his Chapter 7 petition, Debtor listed one debt which was owed to the Plaintiff in this action, SAMARIA K. ROSS.

2. On July 11, 1983, Plaintiff timely filed the above-entitled Complaint seeking a determination that her $41,148.00 claim resulting from a default judgment entered in a prior state court proceeding was nondischargeable under Section 523(a)(6) of the Bankruptcy Code. 11 U.S.C. § 523(a)(6). On July 29, 1983, Debtor filed an Answer which consisted of general allegations admitting or denying the allegations in Plaintiff's Complaint, and which asserted certain affirmative defenses. On August 8, 1983, Plaintiff filed a Reply to Debtor's affirmative defenses. A two-day trial was held on this matter commencing on October 10, 1985 and concluding on October 30, 1985.

3. On May 13, 1981, Plaintiff obtained a default judgment against Debtor in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, in case num-

ber 80 L 1448. On November 5, 1980, Debtor was personally served with a copy of the complaint in that cause by a deputy sheriff of Cook County (Plaintiff's Exhibit # 8). Debtor raised as an affirmative defense that he was not afforded his "day in court" because he was incarcerated in the Illinois Department of Corrections on the date the default judgment was entered. At the trial before this Court, Debtor testified that he was released on parole from the Illinois Department of Corrections on June 13, 1980 and was not thereafter again incarcerated. Service of summons, entry of default order and judgment in the state court action all occurred after Debtor was released on parole on June 13, 1980.

4. Plaintiff's state court complaint sought recovery from Debtor on three counts of tort liability: (1) assault and battery; (2) conversion; (3) intentional infliction of emotional distress. The facts presented at trial on the three torts allegedly committed by Debtor are not in dispute.

5. Prior to the alleged torts, Debtor lived with Plaintiff and her two minor children on a regular basis at her residence in Glen Ellyn, Illinois. However, Plaintiff and Debtor were not married.

6. Plaintiff testified that on November 2, 1978, Debtor broke down the door of Plaintiff's residence and he commenced to strike her. The beating Debtor inflicted upon Plaintiff caused severe damage to her eye.[1] As a direct result of this beating, Plaintiff was hospitalized. Reconstructive surgery had to be performed to repair the damage to Plaintiff's eye.

7. Debtor was subsequently charged with the offense of aggravated battery under Ill.Rev.Stat.1977, Chapter 38, Section 12–4(a) (Plaintiff's Exhibit # 1). On August 2, 1979, Debtor, while represented by counsel, pled guilty to this offense and he received a two-year sentence (Plaintiff's Exhibit # 2), and on September 20, 1979, Debtor was placed on probation for a period of 30 months (Plaintiff's Exhibit # 3).

8. In the spring of 1979, and after the alleged battery had occurred, Plaintiff testified that she invited Debtor back into her residence, and he moved back in with her for a period of time.

9. Plaintiff testified that on July 13, 1979, she was the owner of a Chevrolet Chevette which was relatively new. Plaintiff further testified that on July 13, 1979, Debtor took Plaintiff's automobile without her permission. While in Debtor's possession, the car was wrecked beyond repair or use. In his testimony, Debtor admitted to having taken Plaintiff's car without her permission, and to the fact that the car was wrecked while in his possession.

10. Plaintiff further testified that for several years after the alleged battery, Debtor engaged in a pattern of repeated and systematic harassment of Plaintiff. Debtor telephoned Plaintiff repeatedly and he allegedly made harassing and offensive remarks to her. Debtor sent an envelope through the mails to Plaintiff which showed a female's eyes, mouth and nose with one eye crying.[2]

11. The documentary evidence presented at trial indicates that Debtor's bail bonds and his probation were revoked because he repeatedly violated court orders prohibiting contact with the Plaintiff.[3]

---

1. Plaintiff's Exhibits # 12, # 13, and # 19 are photographs of Plaintiff which show the damage done to Plaintiff's face and eye.

2. The envelope was marked as Plaintiff's Exhibit # 19 at trial. The Court reserved ruling on the admissibility of this exhibit in response to Debtor's objection to its admission. The Court overrules Debtor's objection and admits Plaintiff's Exhibit # 19 into evidence.

3. Plaintiff's Exhibits # 3, # 4, and # 5 are, respectively, the Probation Order, Petition to Revoke Probation and the Order Revoking Probation.

The Orders requiring no contact between Debtor and Plaintiff, and the Orders revoking Debtor's bail bond for violating this condition were marked Plaintiff's Group Exhibit # 16, Plaintiff's Exhibits # 17 and # 18. The Court reserved ruling on the admissibility of these exhibits in response to Debtor's objection to their admission. The Court overrules Debtor's objections and admits Plaintiff's Exhibits # 17 and # 18 into evidence.

Furthermore, Debtor pled guilty in State Court to communicating with a witness in violation of Ill.Rev.Stat.1977, Chapter 38, Section 32-4(b), and the witness happened to be the Plaintiff in this action (Plaintiff's Group Exhibit # 6).

12. Debtor in his pleading and at trial has maintained that the injuries inflicted on Plaintiff were not "willful or malicious" because Debtor's conduct arose from tensions caused by the "common law" living arrangement which existed between Debtor and Plaintiff.

The Court Concludes and Further Finds:

1. Under the doctrine of res judicatā, a default judgment obtained in a prior state court proceeding is conclusive as to the cause of action and liability determined in that proceeding. *Paramount Pictures Corporation v. McKenna (In re McKenna)*, 4 B.R. 160, 162 (Bankr.N.D.Ill.1980). Therefore, Debtor is not allowed to raise a collateral attack in this Court as to the validity of the default judgment obtained by Plaintiff in the Circuit Court of DuPage County, Illinois. The only issue before this Court in this bankruptcy proceeding is the issue of the dischargeability of the debt owed Plaintiff.

2. Section 523(a)(4), (6) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(4), (6).

3. Debts which are the result of an embezzlement or a larceny are excepted from discharge under clause (4) of Section 523(a). 3 *Collier on Bankruptcy* § 523.14, at 523-116 (15th ed. 1984). Larceny is defined as the "fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to his (the taker's) use without the consent of the owner." *Id.*

4. In order to except a debt from discharge under clause (6) of Section 523(a), the debtor's action must have been "willful" and "malicious." *First National Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421 (7th Cir.1985). Under Section 523(a)(6), the term "willful" means deliberate or intentional, and does not mean reckless disregard. *Farmers Insurance Group v. Compos (In re Compos)*, 768 F.2d 1155, 1158 (10th Cir.1985). What constitutes "willful and malicious injury" under Section 523(a)(6) was discussed in this district in *United Bank of Southgate v. Nelson (In re Nelson)*, 35 B.R. 766 (N.D. Ill.1983), where the District court held that " 'willful and malicious injury' means a deliberate or intentional act in which the debtor knows his act would harm the creditor's interest and proceeds in the fact of the knowledge." *Id.* at 776. The Fourth Circuit citing *In re Nelson, supra*, and other cases, held that there was no need to show specific malice under Section 523(a)(6), because implied malice, "which may be shown by the acts and conduct of the debtor in the context of their surrounding circumstances, is sufficient" under Section 523(a)(6). *St. Paul Fire & Marine Ins. Co. v. Vaughn (In re Vaughn)*, 779 F.2d 1003, 1010 (4th Cir.1985).

5. Debts which are based on the traditional intentional torts such as assault and battery, as well as the more recent torts like the intentional infliction of emotional distress are nondischargeable under Section 523(a)(6), provided that the debtor's actions in committing the tort were both "willful" and "malicious." *In re Berberian*, 34 B.R. 580 (Bankr.D.R.I.1983); *Bankruptcy*, Ginsberg § 11,309 at 11,049 (1985).

6. Applying these standards to the present case, it is clear that Debtor's act in striking Plaintiff was intentional and, therefore, willful. Debtor had to realize that his acts would harm the Plaintiff's person, yet he proceeded to strike her in the face of this knowledge. The Court finds specific malice on the part of the

Debtor when he struck Plaintiff because he clearly intended to do her harm. Plaintiff has established through clear and convincing evidence that Debtor's assault and battery against Plaintiff on November 6, 1978 was both "willful" and "malicious" as those terms have been defined under Section 523(a)(6), and the debt arising from Debtor's conduct is, therefore, nondischargeable.

██ 7. Plaintiff has established through clear and convincing evidence that Debtor committed larceny because he took Plaintiff's automobile on July 13, 1979 for his own use, and without her permission. Furthermore, Debtor's act in taking the automobile was intentional and, therefore, willful. Debtor had to realize that his acts would harm the Plaintiff's interest in her automobile, yet he proceeded to take the car in the face of this knowledge. Therefore, the Court finds implied malice on the part of the Debtor when he took Plaintiff's car. The Court further finds that the debt arising from Debtor's willful and malicious conversion and larceny of Plaintiff's automobile is nondischargeable under Section 523(a)(4), (6).

██ 8. Plaintiff has established through clear and convincing evidence that Debtor's acts of harassment toward Plaintiff were intentional and, therefore, willful. Debtor must have known that his numerous telephone calls and offensive remarks, and unauthorized contact with Plaintiff would cause harm and distress to Plaintiff's emotional state, yet he proceeded to engage in this conduct in the face of this knowledge. The Court finds implied malice on the part of the Debtor in his repeated harassment of Plaintiff. Debtor's intentional infliction of emotional distress upon Plaintiff was both "willful" and "malicious" as those terms have been defined under Section 523(a)(6), and the debt arising from Debtor's acts is, therefore, nondischargeable.

9. Debtor's argument that the injuries he inflicted on Plaintiff were not "willful or malicious" because Debtor's conduct arose from tensions caused by their "common law" living arrangement is clearly without merit. Debtor's "common law" living arrangement did not provide him a license to commit battery or larceny; nor was he justified in inflicting emotional distress upon Plaintiff.

10. Plaintiff's $41,148.00 claim resulting from a default judgment entered against Debtor by the Circuit Court of the Eighteenth Judicial Circuit, DuPage County, Illinois, is nondischargeable under Section 523(a)(4), (6) of the Bankruptcy Code. 11 U.S.C. § 523(a)(4), (6).

11. This cause constitutes a core proceeding. 28 U.S.C. § 157.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment be, and the same is hereby entered in favor of Plaintiff, SAMARIA K. ROSS, and against Debtor, THOMAS CUNNINGHAM, upon the above-entitled Complaint to Determine Dischargeability of Debt, in the amount of $41,148.00 plus costs, and that said judgment is found to be nondischargeable under sections 727, 1141, or 1328(b) of title 11 of the United States Code.