In re Steven J. BUTLER, Debtor.

John H.F. HOWKINS and Agnes D. Howkins, his wife, Plaintiffs,

v.

Steven J. BUTLER, Defendant.

Bankruptcy No. 87–05581S.

Adv. No. 88–0421S.

United States Bankruptcy Court, E.D. Pennsylvania.

May 25, 1988.

Joseph L. Carney, Norristown, Pa., for plaintiffs.

John Judge, Philadelphia, Pa., trustee.

Eugene J. Malady, Media, Pa., James G. Buckler, Brookhaven, Pa., for debtor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The Plaintiffs in this adversarial proceeding seek a determination that the Debtor–Defendant's debt to them is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and have filed a motion contending that their pre-petition state court judgment against the Debtor entitles them to summary judgment on "the principals [sic] of collateral estoppel and *res judicata*." The Debtor has filed a cross-motion requesting that summary judgment be entered in his favor. We hold that, although the state court judge trying the dispute giving rise to the Plaintiff's claim made numerous specific findings in his Opinion and found the Debtor chargeable with "fraud in the inducement," he stopped short of indicating whether he necessarily found the Debtor's conduct to constitute intentional "false pretenses," "false misrepresentations," or "actual fraud." We shall therefore deny the cross-motion and schedule the trial of this matter promptly on June 15, 1988.

The Debtor filed the underlying Chapter 7 bankruptcy case on November 6, 1987. The Plaintiffs instituted the instant adversary proceeding on May 15, 1988, about a month after the creditors' meeting scheduled pursuant to 11 U.S.C. § 341(a).

On May 6, 1988, the Plaintiffs filed the motion before us. Noting that the trial

was scheduled shortly thereafter, on May 25, 1988, we entered an Order on May 10, 1988, allowing the Debtor until May 20, 1988, to file a response. Counsel for the Debtor responded promptly in the form of a cross-motion for summary judgment and Brief, despite having other commitments which he articulated in unsuccessfully requesting a brief extension to file same.

On September 24, 1987, the Honorable Samuel Salus, II, of the Court of Common Pleas of Montgomery County, in Case No. 84–03914, issued detailed (46) Findings of Fact and (20) Conclusions of Law, supporting a Verdict and Opinion of the Court (hereinafter referred to as "the Opinion"). This case involved claims by the Plaintiffs, husband and wife, as buyers of residential realty, against the Debtor and his non-debtor wife Patricia (collective referred to hereinafter as "the Sellers"), a roofer, and a plumber. Judge Salus found that the buyers and sellers had enjoyed, in the ten years prior to 1983, a cordial business and social relationship. On several occasions in September, 1983, they discussed the prospects of the Plaintiffs' purchasing the Sellers' home, in the course of which the Sellers represented that the house had a completely new slate roof, that the heater worked adequately, and that there was only a small water flow into the basement from a defective downspout. This resulted in the execution of an agreement of sale for the home between the parties on September 27, 1983, at a price of $220,000.00. Thereafter, the Plaintiffs learned that only part of the new slate roof had been installed due to the failure of the Sellers to make the full payment to the roofer; the heating system was defective, resulting in the bursting of pipes and a replacement of the heater; and the basement leak was caused not by a downspout, but by a hole in the basement floor.

With respect to the roof, Judge Salus found that the Sellers had made certain misrepresentations and that "[t]he truth of the statements regarding the roof was questionable." Opinion at 7, ¶ 31. Regarding the problems with the heater, Judge Salus concluded that the Sellers' "representations were inaccurate and not fully divulged." Id. at 8, ¶ 39. Regarding the water leaks in the basement, he found that the Sellers "knew or had reason to know of the 'wet' basement but misrepresented its condition." Id. at 9, ¶ 42. The court therefore found that the Sellers "violated the trust and friendship reposed in them by the plaintiffs due to their ten year social relationship and antique dealings." Id. at 9, ¶ 44. However, Judge Salus also held that the Sellers' conduct "[a]lthough reprehensible ... was not so egregious, wanton, intentional or reckless" as to justify punitive damages. Id. at 9, ¶ 45.

In his Conclusions of Law, Judge Salus found that the "Plaintiffs have proven fraud in the inducement and misrepresentation." Id. at 9, ¶ 1. He therefore awarded the Plaintiffs $20,000.00 for the deficiencies in the roof; $3,000.00 for damages to the interior of the home which resulted when the pipe burst; and $22,800.00 for replacing the heating system, a total of $45,800.00. The roofer and the plumber were totally exonerated from any liability.

The Plaintiffs' present action is based upon 11 U.S.C. § 523(a)(2)(A), which reads as follows:

Sec. 523. Exceptions to discharge.

(a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

.        .        .        .        .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...

It is well established that, in order to succeed in an action under this Code provision, the creditor must prove each of the five following elements by "clear and convincing evidence:"

(1) that the debtor made the representations;

(2) that at the time he knew they were false;

(3) that he made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representations; and

(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Fitzgerald,* 73 B.R. 923, 926 (Bankr. E.D.Pa.1987). *See also In re McCall,* 76 B.R. 490, 492 (Bankr.E.D.Pa.1987) (FOX, J.); *In re Hammill,* 61 B.R. 555, 556 (Bankr.E.D.Pa.1986) (TWARDOWSKI, present CH. J.); and *In re Taylor,* 49 B.R. 849, 851 (Bankr.E.D.Pa.1985) (GOLD-HABER, CH. J.). We have also emphasized that " '[a] necessary element under § 523(a)(2)(A) is *actual* fraud rather than merely fraud implied in law. 3 COLLIER ON BANKRUPTCY, ¶ 523.08[4] (15th ed. 1985).' *In re Emery,* 52 B.R. 68, 70 (Bankr.E.D.Pa.1985) [GOLDHABER, CH. J.]." *In re Woerner,* 66 B.R. 964, 976 (Bankr.E.D.Pa.1986), *aff'd,* C.A. No. 86-7324 (E.D.Pa. April 28, 1987).

In *Brown v. Felsen,* 442 U.S. 127, 138-39, 99 S.Ct. 2205, 2213, 60 L.Ed.2d 767 (1979), the Supreme Court cautioned that dischargeability complaints must be resolved by bankruptcy courts, and hence that *res judicata* did not apply as to a prior trial court determination of the underlying claims between the parties. This is because a dischargeability complaint generally presents a different "cause of action" than a court proceeding in which the creditor seeks damages. *See United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir.1984); and *In re Laubach,* 77 B.R. 483, 485-86 (Bankr.E.D.Pa.1987).

However, as the Third Circuit Court of Appeals pointed out in *In re Ross,* 602 F.2d 604, 607-08 (3d Cir.1979), *Brown v. Felsen* did not preclude the application of the doctrine of collateral estoppel arising from the prior trial court determination in the bankruptcy court adjudication of dischargeability. *See* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10. Thus, if all of the following prerequisites are satisfied, a bankruptcy court could conceivably conclude that the findings of a court which has tried the subject matter of a dischargeability complaint could rule in favor of one or the other of the parties on the basis of collateral estoppel:

" . . . (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment."

*Id.* at 608 (quoting *Haize v. Hanover Insurance Co.,* 536 F.2d 576, 579 (3d Cir. 1976)).

■ As our recent decision in *In re Gaebler,* 83 B.R. 264, 268-69 (Bankr.E.D.Pa. 1988), indicates, we do not consider the application of collateral estoppel to dischargeability complaints to be broad. Only when the court trying the claim concerning which dischargeability is sought has clearly and unmistakeably made legal conclusions or factual findings which coincide precisely with the requirements of a particular provision of § 523(a) would we be inclined to apply collateral estoppel in favor of either the claimant or the debtor in such a case. A re-trial of a matter previously tried for determination of liability for purposes of determining dischargeability may be tedious. However, we believe that it is necessary in almost every case. It is our experience that disposition of dischargeability complaints turns largely on the credibility of the parties. *Compare Gaebler, supra,* 83 B.R. at 269 (debtor credible; debt discharged) *with In re Mistry,* 77 B.R. 507, 510, 512-13 (Bankr.E.D.Pa.1987); *aff'd sub nom. Writer v. Mistry,* C.A. No. 87-6466 (E.D.Pa. Feb. 9, 1988); and *In re Somerville,* 73 B.R. 826, 833, 837, 838 (Bankr.E.D.Pa.1987) (debtors not credible; debts not discharged). It is necessary to receive live testimony from the most significant party involved, i.e., the the debtor, to make a credibility determination. Therefore, unless the court which has previously tried the matter has made very specific findings on the very issues relevant to the dischargeability complaint, which usually include credibility, we would not apply collateral estoppel. *Compare In re Tilbury,* 74 B.R. 73, 79 (Bankr. 9th Cir.1987) (collateral estoppel applied in "unusual" case including detailed state court record); and *McCall, supra,* 76 B.R. at 494-95 (collat-

eral estoppel applied where state court specifically found all of the elements of actual fraud).

■ The state court decision in the instant case includes a finding that the Sellers were chargeable with "fraud in the inducement." The court states, with a certain degree of precision, as follows:

2. Under Pennsylvania Law the elements of a cause of action for fraud in the inducement include (1) misrepresentation, (2) utterance thereof, (3) an intent by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient on the misrepresentation and (5) damages as a proximate result.

Opinion at 10, ¶ 2. We believe that the reference to "fraud in the inducement" only distinguishes the conduct of the Sellers from "fraud in the factum," i.e., fraud based on a misrepresentation other than a misrepresentation of the contents of a document. See Annot., *Fraud In the Inducement and Fraud in the Factum as Defenses Under UCC § 3–305 Against Holder in Due Course,* 78 A.L.R.3d 1020, 1024–25 (1977). It does not allow us to ascertain whether Judge Salus found actual fraud or "constructive fraud" on the part of the Sellers.

Constructive fraud is defined as an act done or omitted which amounts to positive fraud, or is construed as a fraud by the court because of its detrimental effect upon public interests and public or private confidence, even though the act is not done or omitted with an actual design to perpetrate positive fraud or injury upon other persons. Constructive fraud, sometimes called legal fraud, is nevertheless fraud, although it rests upon presumption and rests less upon furtive intent than does moral or actual fraud. It is presumed from the relation of the parties to a transaction or from the circumstances under which it takes place (footnotes omitted).

37 AM.JUR.2d 23 (1968). *See In re Bowen,* 151 F.2d 690, 691–92 (3d Cir.1945); *Carr–Consolidated Biscuit Co. v. Moore,* 125 F.Supp. 423, 433 n. 28 (M.D.Pa.1954); and *LaCourse v. Kiesel,* 366 Pa. 385, 390, 77 A.2d 877, 880 (1951). Judge Salus takes

great pains to make findings regarding the parties' close and possibly fiduciary relationship, which is an important element of "constructive fraud." 37 AM.JUR.2d, *supra,* at 24. He consistently opts for the term "misrepresentations" to describe the Sellers' conduct, and, at one point, see page 830 *supra* (page 9 ¶ 31 of Opinion), characterizes the lack of the truth of the representations as no more than "questionable." If "constructive fraud" is in fact all that was found to be present, we would not be able to conclude that the state court's findings support the conclusion that the elements of § 523(a)(2)(A) are made out. In any event, the Opinion lacks conclusivity as to the crucial elements of the Debtor's knowing that the representations were false and acting with the "intention and purpose of deceiving" the Plaintiffs. *See* page 831 *supra,* elements (2) and (3). *See also In re Hauser,* 72 B.R. 165, 167 (Bankr. D.Minn.1985). *Cf. Gaebler, supra,* 83 B.R. at 268–69; *In re Castaneda,* 81 B.R. 470, 472–73 (Bankr.N.D.Ill.1988); and *Somerville, supra,* 73 B.R. at 837–38.

We caution the Plaintiffs to assess their case very carefully. If they do not prevail at trial, they may very well be faced with not only lack of success in collecting their claim, but the obligation to pay the attorney's fee of the Debtor's counsel. *See In re Woods,* 69 B.R. 999 (Bankr.E.D.Pa.1987).

■ On the other hand, we refused to conclude that the failure of Judge Salus to award punitive damages should constitute collateral estoppel in favor of the Debtor. The Opinion expressly states that the Sellers made significant misrepresentations regarding the house and that they knew or should have known that they were false. The new slate roof was not completely installed because the Sellers failed to pay more than half of the bill, a fact which they certainly could be expected to know. The court found that the Sellers, by living in the premises for years, were very likely to have known the full extent of the condition of the heating system and the basement. The very use of the term "fraud" in the Opinion, even if embellished by the phrase "in the inducement," may be suggestive of a conclusion that some greater wrongdoing than "constructive fraud" was present.

In deciding the case, Judge Salus did not feel compelled to resolve whether the Sellers "knew" or whether they merely "should have known" or "had reason to know" of the defects in the premises. This is, however, the very issue that we must decide to determine whether the debt is dischargeable under § 523(a)(2)(A). The possibility that the Sellers did know of the defects and nevertheless misrepresented them with the express purpose of deceiving the Plaintiffs cannot be ruled out on the basis of the Opinion, and hence of the record as it stands in this proceeding. We therefore conclude that we cannot decide this proceeding in favor of the Debtor or the Plaintiffs on the ground of collateral estoppel based on this Opinion.

We are therefore compelled to enter the enclosed Order denying both of the Cross-motions for summary judgment and scheduling the matter for trial as promptly as possible.