In re Jesus M. NUNEZ, Debtor.

Joseph RAITANO and Donald
Farrell, Plaintiffs,

v.

Jesus M. NUNEZ, Defendant.

Bankruptcy No. 87 B 16333.
Adv. No. 88 A 00318.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 28, 1988.

Lawrence Rolla, Chicago, Ill., for defendant Jesus M. Nunez.

Robert A. Egan, Chicago, Ill., for plaintiffs Joseph Raitano and Donald Farrell.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on a motion for summary judgment filed by the plaintiffs Joseph Raitano ("Raitano") and Donald Farrell ("Farrell"). For the reasons set forth herein, the Court having considered all the pleadings and exhibits filed, does hereby grant the motion for summary judgment.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. The motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), (O).

## II. FACTS AND BACKGROUND

On September 15, 1985, Raitano and Farrell were employed as Chicago police officers. On that same date, Raitano and Farrell received a radio assignment to proceed to 1437 North Wicker Park, Chicago, Illinois, in response to a complaint. Upon arriving at the scene, Raitano and Farrell placed the debtor, Jesus M. Nunez ("Nunez"), under arrest for the offenses of battery and criminal damage to property. Nunez was thereafter taken into custody. While Raitano and Farrell were escorting Nunez into an interrogation room, Nunez kicked Raitano in the leg and hand and kicked Farrell in the leg and foot causing injury to both. On September 18, 1985, Raitano and Farrell filed criminal complaints against Nunez for the offense of battery claiming that Nunez intentionally, without legal justification caused bodily harm to each by kicking them several times. On October 10, 1985, Nunez entered guilty pleas to the charges of battery as set forth in Section 12–3(a) of the Illinois

Criminal Code. Ill.Rev.Stat. ch. 38 para. 12–3(a) (1985).

Thereafter on May 23, 1986, Raitano and Farrell filed a civil complaint in the Circuit Court of Cook County. In essence, the two-count complaint alleged that Nunez kicked, struck and beat Raitano and Farrell without cause or provocation after being placed under arrest. Nunez answered the complaint, denying the batteries, the lack of provocation and the injuries of Raitano and Farrell. A motion for summary judgment was filed by Raitano and Farrell in that case. The Honorable Thomas E. Hoffman granted the motion on April 1, 1987, as to the issue of liability. Nunez failed to file a response to the motion as ordered. Subsequently, on September 28, 1987, after hearing sworn testimony of Raitano and Farrell, the Honorable Benjamin Nelson entered judgment for Raitano and Farrell and assessed damages in the amounts of $10,000.00 and $3,500.00 respectively. Nunez failed to appear on that date.

Nunez filed a Chapter 7 petition on November 4, 1987. Raitano and Farrell filed the instant adversary proceeding on April 27, 1988, pursuant to 11 U.S.C. § 523(a)(6) to determine the dischargeability of the debts owed them. Nunez has admitted to the facts surrounding the incident. However, Nunez contends that his actions were not willful and malicious because he was intoxicated. Moreover, Nunez claims that Raitano and Farrell suffered no disabling injuries. In addition, Nunez states that the prior civil judgments entered against him were by default, thus precluding the admission of evidence as to the nature and severity of the injuries sustained by Raitano and Farrell. Raitano and Farrell have supported the motion with copies of the criminal misdemeanor complaints, a transcript of the plea agreement on October 10, 1985, the civil complaint, Nunez's answer and both the judgment orders of Judge Hoffman and Judge Nelson. In addition, the parties have submitted their local Rule 12(e) and 12(f) statements.

## III. STANDARD FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the

statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") made applicable to adversary proceedings in the Bankruptcy Court by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hossman v. Spradlin*, 812 F.2d 1019, 1020 (7th Cir.1987).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when no genuine issue of material fact is in dispute. *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585–586, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987).

The Court has reviewed all pleadings and exhibits submitted and hereby finds that no genuine issue of material fact exists. Thus, the case is ripe for determination by summary judgment. The Court notes that *In re Castaneda*, 81 B.R. 470 (Bankr.N.D. Ill.1988) is distinguishable from the case at

bar. Factually, *Castaneda* was similar to the instant case. However, Judge Ginsberg declined to grant summary judgment because the record before him was devoid of any facts surrounding that alteration. The *Castaneda* court had no transcript of the state court proceedings. The record in this case contains a sufficient portion of the relevant state court proceeding providing the necessary factual bases and evidence upon which to properly grant summary judgment. Raitano and Farrell are entitled to summary judgment as a matter of law as discussed hereafter.

## IV. DISCUSSION

### A. *11 U.S.C. § 523(a)(6)*

The discharge provisions of section 523 are construed strictly against a creditor and liberally in favor of a debtor. *In re Pochel*, 64 B.R. 82, 84 (Bankr.C.D.Ill.1986). The creditor seeking an exception to discharge has the burden of proving each element by clear and convincing evidence. *In re Bogstad*, 779 F.2d 370, 372 (7th Cir. 1985); *In re Bonnett*, 73 B.R. 715, 717 (Bankr.C.D.Ill.1987).

Section 523(a)(6) provides:

> (a) A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> .    .    .    .    .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

In order for a debt to be held nondischargeable under section 523(a)(6), the creditor has the burden of proving that the injury resulted from an act that was both willful and malicious; *In re Kimzey*, 761 F.2d 421, 425 (7th Cir.1985); *United Bank of Southgate v. Nelson*, 35 B.R. 766, 768 (N.D.Ill.1983); *In re Hopkins*, 82 B.R. 952, 953 (Bankr.N.D.Ill.1988). The term "willful" means "deliberate or intentional," and "malicious" means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill will." *In re Condict*, 71 B.R. 485, 487

(N.D.Ill.1987). The debtor need not act with ill will or malevolent purpose toward the injured party. *In re Hallahan,* 78 B.R. 547, 550 (Bankr.C.D.Ill.1987). Thus, "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." 3 *Collier on Bankruptcy* ¶ 523.16 at 523–117 (15th ed.1988). Section 523(a)(6) protects injured parties who have hazarded the risks of litigation and obtained a verdict, only to have the debtor declare bankruptcy. *In re Kimzey,* 761 F.2d at 425.

Debts that are based on the traditional intentional torts such as assault and battery are generally considered to derive from willful and malicious conduct and therefore are nondischargeable under section 523(a)(6). *In re Cunningham,* 59 B.R. 743, 746 (Bankr.N.D.Ill.1986); *Smith v. Pitner,* 696 F.2d 447, 449 (6th Cir.1982); *In re Cooney,* 18 B.R. 1011, 1013 (Bankr.W.D. Ky.1982); Ginsberg *Bankruptcy,* § 11,309 at 11,049 (1985).

### 1. *THE WILLFUL REQUIREMENT*

Based on all the state court pleadings furnished and with special attention paid the transcript of the plea agreement and Nunez's statements and admissions therein, the Court finds that Nunez's acts of striking Raitano and Farrell were intentional and therefore willful. Nunez pled guilty to both criminal battery charges and admitted kicking the police officers without justification.

The Illinois Criminal Code defines intent as: "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct." Ill.Rev. Stat. ch. 38, para. 4–4 (1985).

In addition, knowledge is defined by the Illinois Criminal Code as follows:

A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

(b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct.

Conduct performed knowingly or with knowledge is performed wilfully, within the meaning of a statute using the latter term, unless the statute clearly requires another meaning.

Ill.Rev.Stat. ch. 38, para. 4–5 (1985).

Nunez, however, now contends that he was highly intoxicated at the time of the incident and was therefore unable to form any specific intent nor able to have malice imputed to his actions. Intoxication is no excuse where the act of the debtor is clearly intentional. *Cooney,* 18 B.R. at 1014. Upon careful review of the state court record presented, the Court finds no evidence to make a finding that Nunez was so highly intoxicated so as to vitiate intent or malice on his part.

The only reference to intoxication was made in the criminal action. During the plea agreement hearing, counsel for Nunez stated, "Also at this time I'd indicate he had been drinking. Although he is not saying he is not guilty, he is just indicating these incidents were all by the impact of the alcohol." Thereafter, Nunez said, "I went to the hospital thirty days; they stole my car, $27,000. I'd like to say I am sorry. They stole it in front of my house; I was all depressed and drinking, but I am still going [to an alcoholic treatment program] because I need the help." Certainly these oblique statements about Nunez's drinking do not constitute a plea of not guilty by reason of intoxication. Moreover, these comments did not preclude the state court judge from approving the plea agreement. In any event, Nunez's claim of intoxication asserted here is no excuse where the acts

giving rise to the dischargeability complaint are clearly intentional.

## 2. *THE MALICIOUS REQUIREMENT*

The Court further finds that Nunez's actions were malicious. Nunez voluntarily pled guilty to the offense of battery. Section 12–3(a) of the Illinois Criminal Code provides:

> A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.

Ill.Rev.Stat. ch. 38, para. 12–3(a) (1985).

A state court judge, after an evidentiary hearing on damages, found that Nunez's actions caused damage in the amount of $10,000.00 and $3,500.00 to Raitano and Farrell respectively. Nunez's admitted actions were much more than mere physical contact of an insulting nature. His actions of intentionally kicking both Raitano and Farrell to the extent of such damages as awarded by Judge Nelson were admitted. Such conduct is essentially "wrongful, without just cause, even in the absence of personal hatred, spite or ill will," well within the scope of the term "malice" for Bankruptcy Code § 523(a)(6) purposes as the above case law has evolved in this District and Circuit.

In Illinois, in a civil action for assault and battery, "[t]he gist of the action for an assault and battery is malice, which implies a wrong inflicted on another with evil intent or purpose." 3 Illinois Law and Practice, *Assault and Battery*, § 12 (1983 and Supp.1987), and cases cited therein. In civil actions for assault and battery the complaint need not specifically charge malice. *Id.* at § 21. Malice need not be expressly proved, but may be presumed where the defendant has acted with wanton, willful, or reckless disregard of a plaintiff's rights. *Id.* at § 22.

Nunez contends malice may not be imputed because during the course of the incident there were no "vicious consequences." Nunez further alleges that the extent of the beating was not unusual. Moreover, he asserts that the record is silent as to whether any of the injuries were the result of Raitano's and Farrell's misreading of a volatile situation and perhaps overreacting to it. The Court is unaware of any necessity of a finding of "vicious consequences" in order to find the existence of willfulness and maliciousness. The admitted and undenied fact that Nunez struck two police officers in and of itself constitutes an intentional act for which malice is presumed under Illinois law. Furthermore, the nature of these batteries and the surrounding facts in the record before this Court amply support the finding that Nunez's actions were both willful and malicious and caused damage to Raitano and Farrell. His conduct was far more serious than a mere technical battery for which nominal damages would lie.

Moreover, because the burden of proof standard of "guilty beyond a reasonable doubt" was higher in the criminal action the Court finds that Raitano and Farrell have met the less stringent standard of "clear and convincing" evidence as shown by the record in this case. Nunez's guilty plea to the criminal charges of battery, his statements at the hearing thereon, the civil determination of Nunez's liability and assessment against him of damages after an evidentiary hearing all combine to lead the Court to the logical conclusion that his actions were both willful and malicious. The case at bar is distinguishable from *Castaneda*. There, the court refused to apply the doctrine of collateral estoppel because the parties failed to furnish the court a record sufficient to determine whether the debtor acted willfully and maliciously.

## B. COLLATERAL ESTOPPEL

Raitano and Farrell contend that Nunez's actions were determined to be willful and malicious in the state criminal and civil proceedings, thus the issue of liability is res judicata. The United States Supreme Court has stated that the doctrine of res judicata is inapplicable to a bankruptcy court's consideration of debt dischargeability. *Brown v. Felsen*, 442 U.S. 127, 138–139, 99 S.Ct. 2205, 2212–2213, 60 L.Ed.2d

767 (1979). However, as to the doctrine of collateral estoppel, the Supreme Court noted in dicta that

> [i]f, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17 [of the former Bankruptcy Act], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues in the bankruptcy court.

*Id.* at 139, 99 S.Ct. at 2213. The Court notes that under *Brown,* although the issue of dischargeability for purposes of section 523(a)(6) is to be determined by the bankruptcy court, collateral estoppel would prevent relitigation of issues previously determined in the state court if: (1) the state court, in determining those issues, used standards identical to those in the Bankruptcy Code; and (2) the criteria necessary for collateral estoppel to apply were satisfied. *See also Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987); *In re Roemer,* 76 B.R. 126, 128 (Bankr.S.D.Ill.1987).

In *Grip–Pak, Inc. v. Illinois Tool Works, Inc.,* 694 F.2d 466 (7th Cir.1982), the court explained the difference between collateral estoppel and res judicata as follows:

> Res judicata bars the relitigation of claims that could have been advanced in an earlier proceeding, whether they were or not, because they arise out of the same facts. The purpose is to reduce the costs of litigation, to the parties and to the courts, by forcing closely related claims to be combined in a single lawsuit.... The doctrine of collateral estoppel is based on a different concept of economy of litigation: if an issue happens to have been litigated and determined in a previous suit between the parties, there is no reason to litigate it again. But the object is not to force the issue to be litigated in the earlier suit. The propriety of having two suits is accepted, presumably because they are not that closely related; and if the issue in question is first litigated in the second

suit, that is fine; the only desideratum is that it not be twice litigated.

*Id.* at 469.

The Seventh Circuit in *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390 (7th Cir.1986) provided an explanation of the doctrine of collateral estoppel.

> "Collateral estoppel, which is also known as issue preclusion, generally prevents a party from relitigating an issue the party has already litigated and lost." *Ferrell v. Pierce,* 785 F.2d 1372, 1384 (7th Cir. 1986). "In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir.1986). *Accord County of Cook v. Midcon Corp.,* 773 F.2d 892, 898 (7th Cir.1985). The policy underlying the doctrine is that "one fair opportunity to litigate an issue is enough." *Bowen v. United States,* 570 F.2d 1311, 1322 (7th Cir.1978). The party asserting estoppel has the burden of establishing which issues were actually determined in his favor in the prior action. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir.1985). *See Jones v. City of Alton,* 757 F.2d 878, 885 (7th Cir.1985).

*Id.* at 392–393; *See also Appley v. West,* 832 F.2d 1021, 1025 (7th Cir.1987).

Collateral estoppel has been used to support an award of summary judgment in discharge cases. *United States Life Title Insurance Co. v. Dohm,* 19 B.R. 134, 137 (N.D.Ill.1982). All elements are present for application of the doctrine to this case based upon the record of both state court proceedings presented to this Court. Nunez was party defendant; the civil battery issues were litigated and decided on the merits; resolution of those issues are necessary to the result here; and the dispositive substantive issues under Illinois law are identical to those in this adversary pro-

ceeding. The dischargeability provision pursuant to section 523(a)(6) was the only issue not present in the state battery actions.

██ The bankruptcy court may look behind a state court judgment to determine whether a debt is dischargeable. *Klingman v. Levinson*, 831 F.2d at 1295. In the case at bar, only the issue of dischargeability was not litigated in the state court. Therefore, the state court determination of liability and damages for the batteries in the civil matter and the guilty plea in the criminal matter do not absolutely preclude a trial on the issue of dischargeability. Nevertheless, the doctrine of collateral estoppel may be used to preclude relitigation of issues that were previously litigated in the state court.

██ The issues of the willfulness and maliciousness of the injuries to Raitano and Farrell were effectively disposed of in the state court proceedings. The Court has no doubt that Nunez's actions on September 15, 1985, constituted willful and malicious acts for Bankruptcy Code purposes. Nunez's actions were admittedly intentional and without legal justification in the state court criminal proceeding at the time of the plea agreement. Malice was presumed under Illinois law in the subsequent state court civil action which proceeded to summary judgment on liability and an evidentiary hearing on damages which produced the subsequent judgment. Nunez is, therefore, collaterally estopped from relitigating the question of whether he willfully and maliciously injured Raitano and Farrell.

Nunez argues that the judgments entered against him in the civil action were by default and no evidence as to the nature of severity of the injuries was presented. To the contrary, Judge Nelson's Judgment Order assessing damages clearly shows on its face that he heard the sworn testimony of Raitano and Farrell. Prior thereto, Judge Hoffman entered summary, not default, judgment on the issue of Nunez's civil liability for his batteries of Raitano and Farrell. Nunez was represented by the same attorney of record in the state court civil action as in this bankruptcy case

and adversary proceeding. The entry of summary judgment constitutes litigation for purposes of collateral estoppel. *Continental Can, U.S.A. v. Marshall*, 603 F.2d 590, 596 (7th Cir.1979); *United States Life Title Insurance Co. v. Dohm*, 19 B.R. 134, 138 (N.D.Ill.1982). The fact that Nunez defaulted and did not appear at the evidentiary hearing on damages does not bar application of the doctrine of collateral estoppel. Under section 523(a)(6) the nature of the act gives rise to nondischargeability, not the amount of damages resulting from the act.

## V. CONCLUSION

For the foregoing reasons, the Court hereby grants the plaintiffs' motion for summary judgment and finds the debts owed Joseph Raitano in the amount of $10,-000.00 and Donald Farrell in the amount of $3,500.00 nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

See written Order.